**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 19–cv–01937–RM–KMT

CARRIO CABLING CORPORATION,

      Plaintiff,

v.

STRYKER CORPORATION, and
JOHN DOE,

      Defendants.

---

# ORDER

---

This matter is before the Court on the Recommendation of United States Magistrate Judge (the "Recommendation") (ECF No. 58) to deny Defendant Stryker Corporation's ("Stryker") Motion to Dismiss (the "Motion") (ECF No. 31). Stryker filed an objection, Carrio Cabling Corporation ("Carrio") responded, and Stryker replied. Upon consideration of the Recommendation, the Motion, all relevant parts of the court record, and the applicable law, and being otherwise fully advised, the Court finds and orders as follows.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 72(b)(3) requires the district court judge to "determine de novo any part of the magistrate judge's [recommendation] that has been properly objected to." In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). An objection is proper if it is filed within fourteen days of

the magistrate judge's recommendations and specific enough to enable the "district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *U.S. v. 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)).

## II.     BACKGROUND

Briefly,[1] Carrio sold custom, Carrio-designed cable assemblies to Stryker for use in medical equipment. The main issues involve six cable assemblies and various designs and processes. In 2010, after the parties already had a business relationship for several years, Carrio and Stryker entered into a "Short Form Master Supply Agreement" (the "Agreement") on Stryker's form. (ECF No. 31-1.) The Agreement provides, in relevant part:

- The "preamble"[2] states: "Pursuant to the terms of this [Agreement]…[Stryker] hereby agrees to purchase from Supplier [Carrio]…various products, parts or components as listed from time to time on Stryker's Purchase Order or electronic submission, *subject to the terms as set forth herein*";

- The MSA was effective "until otherwise notified in writing by Stryker."

- "Stryker may, at any time, terminate this Agreement, in whole or in part, without cause, upon written notice to [Carrio]…."

- "The term 'Product(s)' shall refer to the materials, supplies, items and equipment covered by this Agreement."

- "The term 'Services' shall refer to the work and/or Services covered by this Agreement."

- "This Agreement sets forth the complete agreement between the parties *with respect to the subject matter hereof*, and supersedes any and all prior or contemporaneous oral or written communications relating thereto."

- "<u>Prices</u>. Per Exhibit A."

---

[1] The Court assumes Carrio's factual allegations are true and construes them in a light most favorable to Carrio.
[2] Stryker's term, which the Court uses for ease of reference and not for any indication of its importance in the Agreement.

- "<u>Invoices</u>. All invoices…. In addition to any other information specified elsewhere herein…invoices… shall contain the following information: Purchase Order number, item number, *description of Products and Services*, quantities, weight, unit prices and extended totals."

- "<u>Payment</u>. At Stryker's option, Stryker *shall make payment for Products and Services*…as follows: a) 3% 5-days, Net 45-days; b) 2% 10-days, Net 45-Days.…"

- Stryker may disclose its "Confidential Information" to Carrio and Carrio "shall keep all Proprietary Information of Stryker confidential…."

- "<u>Ownership</u> [of Intellectual Property]: *To the extent this Agreement includes Services*, Supplier agrees that all writings, drawings, designs…and all works of authorship created by [Carrio] in performance of its obligations hereunder…are the sole property of Stryker…."

- "The Agreement shall be governed by and construed according to the laws of the State of Michigan…."

(Agreement, ECF No. 31-1 (underscore in original, italics supplied).)[3]

Carrio alleges Stryker wrongfully caused Carrio to incur expenses, misappropriated Carrio's trade secrets, and terminated the Agreement. Stryker moved to dismiss all claims relying predominately on the Agreement. In a nutshell, Stryker contended the Agreement governs the parties' entire relationship and precludes all claims. Carrio countered that, at most, it covers three of the six cable assemblies. The Magistrate Judge recommended denying the Motion, relying primarily on a finding that the Agreement is intrinsically ambiguous.[4] Stryker's objection followed.

---

[3] The Recommendation noted the Payment provision (Section 7) of the Agreement required that each service be invoiced. (ECF No. 58, p. 8 n.5). Thus, in analyzing the Recommendation and objection, the Court also considered the corresponding Invoices provision (Section 6).

[4] "There are two types of contractual ambiguity: intrinsic [patent] and extrinsic [latent]. Intrinsic ambiguity exists when the agreement itself is unclear, and extrinsic ambiguity exists when a perfectly clear agreement is unclear when applied to the real-world context of the deal." *Interim Health Care of N. Illinois, Inc. v. Interim Health Care, Inc.*, 225 F.3d 876, 879 (7th Cir. 2000); *see also Kendzierski v. Macomb Cty.*, 503 Mich. 296, 931 N.W.2d 604, 615 (2019). "A classic example of latent ambiguity is the tale of the Peerless. A contract to buy cotton scheduled to arrive from Bombay, India, on the ship Peerless appeared plain on its face. Objective evidence revealed, however, that there were actually two ships by the same name. Thus, it became unclear which ship the goods would be on and extrinsic evidence was appropriate to aid in the resolution of the ambiguity." *Cherry v. Auburn Gear, Inc.*, 441 F.3d 476, 484 (7th Cir. 2006).

## III.    DISCUSSION

Stryker raises several objections to the Recommendation which hinge on the argument that the Recommendation erred in failing to apply Michigan law and in finding the Agreement to be ambiguous. And, Stryker asserts, if this finding is erroneous, it follows that the remaining recommendations are also erroneous. Carrio, of course, argues otherwise.

### Ambiguous or Unambiguous Agreement?

Stryker argues the Agreement is clear, and the Recommendation erred in finding otherwise. Carrio asserts Stryker waived this argument by not raising it previously and, further, the Recommendation is correct. The Court starts – and stops – with whether the Agreement is intrinsically ambiguous.

It is well established that "'[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.'" *ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1185 (10th Cir. 2011) (quoting *Marshall v. Chater*, 75 F.3d 1421, 1426–27 (10th Cir. 1996)). Stryker argues that (1) ambiguity is not a new issue and (2) both parties contended the Agreement was unambiguous.[5] The Court's review shows this argument is correct only in part.

The issue of whether the Agreement is ambiguous is not new – Carrio raised it several times in its response brief.[6] In fact, Carrio raised it out of the chute in arguing "[c]onsistent with this principle, where a movant seeks dismissal based on *ambiguous* contractual provisions, the Court may not resolve those provisions' meaning on a motion to dismiss." (ECF No. 42, p. 4 (italics added) (quotations, internal brackets, and citation omitted).) The issue of the correct

---

[5] The Recommendation also questioned whether the contract was so vague as to be enforceable. Stryker challenged this finding in conjunction with the finding of ambiguousness. Although it does not appear that any recommendations were made based on the lack or questionable existence of an enforceable contract, the Court declines to accept any such finding. First, because no party raised this argument and, second, because the current record does not support such a finding.

[6] *See* ECF No. 42.

standard to be applied under Michigan law, however, is new. Stryker remained silent in response to Carrio's arguments of ambiguity. Stryker either ignored or omitted to address Carrio's arguments and failed to assert what Michigan law required and how, under such law, the Agreement is not ambiguous. Instead, Stryker moved forward as if the Agreement clearly supported its position. Thus, Stryker cannot now be heard to complain that the Recommendation did not cite to Michigan law in its construction of the Agreement.[7]

Notwithstanding the foregoing, the Court finds, upon de novo review, that it cannot accept or reject the Recommendation based on this issue because it is inadequately briefed. The parties' arguments and analysis on the issue of ambiguity (or the lack thereof) are cursory at best in many respects.[8] And, in order to prevail on its objection, Stryker would have to show that the terms of the Agreement at issue are clear and they preclude each of Carrio's claims. The Court finds that Stryker fails to make this showing here.

For example, Stryker does not argue Carrio has not otherwise plausibly pled trade secrets claims. Instead, Stryker relies primarily on Section 14(a) of the Agreement which provides that "*[t]o the extent this Agreement includes Services*, Supplier agrees that all writings, drawings, *designs*…and all works of authorship created by [Carrio] in performance of its obligations hereunder…*are the sole property of Stryker*…." (ECF No. 31-1, at 14(a) (italics added).) Thus, Stryker would have to demonstrate that, under the Agreement, despite Carrio's factual plausible allegations, this Section is applicable, covers the trade secrets at issue, and effectively transfers ownership of the trade secrets to Stryker.

---

[7] To the extent that the Recommendation did not apply Michigan law. In fact, the Recommendation cited to Michigan law in its contract analysis, e.g., the elements for a breach of contract claim.

   Stryker's objection is especially questionable where both parties relied also on law from Colorado and other jurisdictions in their arguments before the Magistrate Judge, e.g., Stryker argued that Colorado's economic loss rule should be applied to maintain the boundary between a Michigan Agreement and Colorado tort law.

[8] Carrio's argument before the Magistrate Judge was also insufficient. It argued ambiguity but failed to provide legal authority or analysis.

In order to trigger Section 14(a), it appears Stryker would have to show that (1) the Agreement covered "Services"; (2) Carrio rendered Services; and (3) such Services were rendered during the term of the Agreement. But, as Carrio argued before the Magistrate Judge, the factual allegations are that while there were redesigns in 2016, there were also designs and processes made *prior* to the parties' Agreement; therefore, those prior designs are not covered by the Agreement. And, further, as Carrio asserted, the trade secrets at issue include more than those which were developed solely for products sold to Stryker, and such *other* trade secrets would also clearly be outside the Agreement. Additionally, an issue is raised as to whether Stryker has sufficiently shown these Carrio designs are within the coverage or scope of the term "Services." As the Magistrate Judge noted, if Services were provided and covered under the Agreement, Section 7 (together with Section 6) of the Agreement required the Services to be invoiced and paid. (ECF No. 58, p. 8 n.5.) The allegations, however, are that there were purchase orders and payments *for parts*, not for designs or redesigns. (Amended Complaint, *see, e.g.,* ¶¶ 16, 31, 103, 106, 119.) Accordingly, Stryker fails to show the trade secrets claims are subject to dismissal.

The Court need not go further for Stryker's other arguments fare no batter. For these reasons, the Court agrees the Motion to Dismiss should be denied.

## IV.    CONCLUSION

Based on the foregoing, it is **ORDERED**

(1) That Defendant's Objection (ECF No. 59) is OVERRULED for the reasons stated herein;

(2) That the Recommendation (EC No. 58) to deny Defendant's Motion to Dismiss is ACCEPTED for the reasons stated herein; and

(3) That Defendant's Motion to Dismiss (ECF No. 31) is DENIED.

DATED this 5th day of October, 2020.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge