IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 19–cv–01937–RM–KMT

CARRIO CABLING CORPORATION,

    Plaintiff,

v.

STRYKER CORPORATION, and
JOHN DOE,

    Defendants.

---

# ORDER

---

This matter is before the court on Plaintiff Carrio Cabling Corporation's ("Carrio") "Motion to Maintain AEO Designation Pursuant to the Amended Protective Order" filed April 30, 2021. [Doc. No. 104.] Defendant Stryker Corporation filed a Response [Doc. Nos. 114/116], together with a Motion to Restrict Access to the Response [Doc. No. 113] on May 21, 2021. Carrio filed a Reply [Doc. Nos. 119/121] also with a Motion to Restrict Access to the Reply [Doc. No. 118] on June 4, 2021.

Carrio has marked Plaintiff's First Supplemental Responses" (FSRs") (Resp., Ex. 1) [Doc. No. 105] as Attorneys-Eyes-Only confidential material pursuant to the Amended Stipulated Protective Order [Doc. No. 89], seeking non-disclosure to Stryker and its personnel. Stryker now argues that such a designation is unwarranted on the grounds that the FSRs do not contain trade secrets; that Carrio has failed to establish that disclosure will cause Carrio

competitive harm; and that Stryker will be denied due process if it cannot review the evidence being presented against it. (Resp. at 1.)

*LEGAL STANDARD*

Generally, the analysis for determining whether to issue a protective order or to retain an attorney's-eyes-only designation is the same. *See In re Michael Wilson & Partners, Ltd.,* No. 06-cv-02575-MSK-KLM, 2007 WL 3268475 (D. Colo. Oct. 30, 2007). The decision to issue a protective order rests within the sound discretion of the trial court. *Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir. 1990). Such protection is warranted, upon a showing of good cause, to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," and can include an order "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Fed. R. Civ. P. 26(c) and (c)(7).

To carry the good cause burden under Rule 26(c)(7), a party must first establish that the information is a trade secret or other confidential research, development, or commercial information and then demonstrate that its disclosure might be harmful. *A Maj. Difference, Inc. v. Wellspring Prods., Ltd. Liab. Co*., 243 F.R.D. 415, 416-17 (D. Colo. 2006) (citing *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325-326 (10th Cir. 1981)).

The burden is on the party resisting discovery or dissemination to establish that the information sought should be subject to additional protection. *In re Michael Wilson & Partners, Ltd.,* 2007 WL 3268475 at *2 (citing *Reed v. Nellcor Puritan Bennett,* 193 F.R.D. 689, 690 (D. Kan. 2000)). To meet this burden, the moving party must set forth specific facts showing good cause, not simply conclusory statements. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 n. 16

(1981). Thus, Plaintiff must do more than simply allege that the confidential materials are trade secrets. *S.E.C. v. Misner,* No. 07–cv–01640-REB-MEH, 2007 WL 3232132, at *3 (D. Colo. Oct. 30, 2007) (citing *Reed*, 193 F.R.D. at 691). *See also JTS Choice Enterprises, Inc. v. E.I. Du Pont De Nemours & Co.*, No. 11-CV-03143-WJM-KMT, 2013 WL 791438, at *2 (D. Colo. Mar. 4, 2013).

To determine whether the information for which Carrio seeks AEO protection qualifies as a trade secret, the court may consider the following factors: (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business; (3) precautions taken by the holder of the alleged confidential information to guard secrecy of the information; (4) the savings effected and value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information. *Harvey Barnett, Inc. v. Shidler*, 143 F. Supp. 2d 1247, 1252-53 (D. Colo. 2001); *Netquote, Inc. v. Byrd*, No. 07-CV-00630-DME-MEH, 2007 WL 9814460, at *3 (D. Colo. Oct. 31, 2007) (citing *DDS, Inc. v. Lucas Aerospace Power Transmission Corp.,* 182 F.R.D. 1, 5 (N.D. N.Y. 1998)). *See also Colo. Supply Co. v. Stewart,* 797 P.2d 1303, 1306 (Colo. App. 1990).

If the material is a trade secret worthy of protection the court must then determine the proper level of protection warranted. *Netquote*, 2007 WL 9814460, at *1–2. In other words, if the material is a trade secret, the court must determine whether a confidential designation will be adequate protection from unwarranted dissemination or whether it is necessary to actually keep the information secret from a litigant by restricting access to only its lawyer and experts.

Confidential information that may be used against the company by a direct competitor in the lawsuit is generally afforded the higher level of protection. *See A/R Roofing, L.L.C. v. CertainTeed Corp.*, No. 05-1158-WEB, 2005 WL 6794228, at *2 (D. Kan. Dec. 5, 2005) (finding that disclosure of information that could place one party at a disadvantage in the marketplace supported an attorney-eyes-only provision); *Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 529 F. Supp. 866, 890 (E.D. Pa. 1981) ("[c]ompetitive disadvantage is a type of harm cognizable under Rule 26").

### *ANALYSIS*

This motion seeks court authorization for Carrio to protect as Attorney's Eyes Only, its more in-depth descriptions of Carrio's manufacturing process, tooling and procedures that are outlined as part of f Plaintiff's First Supplemental Response to Stryker Corporation's Interrogatories ("FSRs"). A comparison between Carrio's original responses to Stryker's interrogatories and requests for production of documents (Resp, Ex. 2) [Doc. No. 105], and the FSRs shows that the original responses were couched in generalized terms, which would allow a person generally to understand the "nature" of the claimed trade secret but with insufficient data for a court to actual make a determination about whether trade secret status was warranted during the discovery phase of the litigation. The FSRs provide much more specific information about the processes and sequencing used by Carrio to manufacture the cable assemblies sold to Stryker.

The information for which Carrio seeks AEO protection does not appear to qualify as a trade secret <u>between these two entities</u>. First, Stryker is not a direct competitor of Carrio. Stryker is a buyer, or customer, of Carrio. Stryker does not make its own cable assemblies. The

court, however, agrees that generally the information is worthy of trade secret protection as to Carrio's competitors.

Carrio has set forth its procedures to protect the information from the public and its own competitors, but it admittedly did not protect this information from Stryker. *See* Colo. Rev. Stat. § 7-74-102(4) ("To be a 'trade secret' the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes.") Carrio willingly shared its processes with its buyer, Stryker, and actually conducted a full tour of its manufacturing process for Stryker representatives. (*See* Mot. at 4-5, "Stryker representatives visited Carrio on April 13, 2017, including a senior designer who had extensive engineering experience in tooling, fixtures and electrical testing. During Stryker's visit, they spent a great deal of time on the production floor, observed every phase of production, molding, final assembly, final inspection and testing of the Cable Assemblies.") And, while Carrio sets forth a number of specific manufacturing processes in detail and explains why those processes are unique to Carrio and that they provide Carrio with a competitive advantage, the very allegations in the Complaint are that Sinbon is already manufacturing the cable assemblies for a lower price than did Carrio, using Carrio's processes and procedures. (Reply at 7.)

Assuming *arguendo*, for purposes of this Order, that the processes, tooling and procedures employed by Carrio to produce the questioned assemblies are trade secrets at least as to direct competitors of Carrio such as Sinbon, this court nevertheless finds that additional protection via AEO designation between Stryker and Carrio is unnecessary to protect the parties' interests.

Pursuant to the Protective Order, Confidential documents include those materials that "have not been intentionally released to the public by the Designating Party to the best of its knowledge and which, if disclosed, would compromise the legitimate privacy interests of the Designating Party or its employees or affiliates, or that constitutes a trade secret or other confidential research, development, or commercial information." (Protective Order at 2.) Confidential documents may only be disclosed to the parties, the attorneys for the parties who are actively working on the case, experts, the court, and certain persons involved in depositions such as witnesses and court reporters so long as they are properly advised. (*See id.* at ¶ 3(A)–(K).)

The Protective Order defines Attorney's Eyes Only Confidential materials as those which "the Designating Party in good faith believes contains trade secrets or highly sensitive business information, the disclosure of which is reasonably believed to cause harm to the business or competitive position of the Designating Party and that cannot be avoided by less restrictive means." (*Id.*) Attorneys Eyes Only designation further restricts those already Confidential documents from disclosure to the parties, deposition deponents, witnesses and persons who are subject of the confidential information,[1] and allows the information in every event to only be used in connection with the Lawsuit. (*Id.* at 4.)

---

[1] The Protective Order clarifies, "[f]or the avoidance of doubt, AEO Information may be disclosed, summarized or otherwise communicated in whole or in part to deponents or witnesses during examinations if the deponent or witness meets the requirements of Paragraph 3(J), [the author or recipient of the document or any person who received the document prior to the case being filed] above."

Marking the FSRs "Confidential" would protect Carrio's descriptions of its processes and procedures from dissemination outside of this case[2] and would control and categorize who would be allowed to view the confidential information. Carrio is insisting on a higher level of protection, however, so it must set forth facts demonstrating that disclosure to Stryker itself, not just to Stryker's attorneys, might be harmful to Carrio. *A Maj. Difference, Inc.,* 243 F.R.D. at 416-17.

In trade secret discovery battles, if harm can be shown, "(t)he claim of irreparable competitive injury must be balanced against the need for the information in the preparation of the defense." *Centurion Indus., Inc.,* 665 F.2d at 326.

Carrio states,

> Carrio alleges that Stryker misappropriated these trade secrets and used them to assist Carrio's competitor—Sinbon Electronics ("Sinbon")—so that Carrio's competitor could produce the same cable assemblies at a lower price for Stryker.

(Mot. at 2.) This statement alone tends to defeat Carrio's request for AEO treatment between the two parties to the litigation by negating any potential *competitive* harm. *See A Major Difference, Inc.*, 243 F.R.D. at 417 ("The parties have recognized that competitive harm to [Defendant] could result from the disclosure of [the AEO marked] materials.") The allegations in the Complaint, as summarized in Carrio's Motion, are that Stryker already has Carrio's trade secret information and that Stryker unlawfully and improperly gave that information to Sinbon for its

---

[2] Paragraph 12 of the Protective Order provides "12. Confidential Information and AEO Information shall be used by the recipient solely for purposes of this Lawsuit, and shall not be used for any other purpose including, without limitation, any business, proprietary or commercial purpose, nor shall it be disclosed to any third parties other than as allowed by this Protective Order . . . . " [Doc. No. 89 at 6.]

7

own benefit; obviously, the trade secrets can't be passed on to a competitor if the alleged passer, in this case Stryker, doesn't have them to begin with.

Carrio argues that it is possible Stryker did not learn the totality of Carrio's processes during the plant tour and that it needs to protect all the process information because it is uncertain what Stryker knows and does not know. (Mot. at 2.) It is difficult to conclude, however, that giving Stryker information about processes it is otherwise not aware of would result in competitive harm to Carrio. Carrio already asserts that, Sinbon, allegedly having been provided with at least some of Carrio's trade secret information, is producing the cable assemblies for Stryker at the current time at a lower price than Carrio. (Mot. at 2, "Carrio alleges that Stryker misappropriated these trade secrets and used them to assist Carrio's competitor— Sinbon Electronics ("Sinbon")—so that Carrio's competitor could produce the same cable assemblies at a lower price for Stryker.") In other words, the harm has already occurred, and Sinbon is already producing cable assemblies at a lower price even without any of the theorized "missing information."

Ultimately, the risk identified by Carrio concerning Stryker's alleged dissemination of Carrio's trade secrets to other suppliers in order to obtain cheaper cable assembly components must be balanced against the harm to Stryker of forcing its attorneys to try the case without the assistance of their client in a case where a third parties' design and process is at issue. *See Centurion Indus., Inc.*, 665 F.2d at 325. *See also Healthtrio, LLC v. Aetna, Inc.,* No. 12-CV-03229-REB-MJW, 2014 WL 6886923, at *4 (D. Colo. Dec. 5, 2014). *Also* c*ompare Innovatier, Inc. v. Cardxx, Inc.*, No. 08–cv–00273–PAB–KLM, 2008 WL 4889867 (D. Colo. Nov. 13, 2008)

(allowing access to in-house counsel), *with BIAX Corp. v. Nvidia Corp.,* Case No. 09–cv–01257–PAB–MEH, 2009 WL 3202367 (D. Colo. Oct. 5, 2009) (denying access to in-house counsel).

Trade secret law "does not offer protection against discovery by fair and honest means, such as by independent invention, accidental disclosure, or by so-called reverse engineering, that is by starting with the known product and working backward to divine the process which aided in its development or manufacture." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476 (1974). Stryker has been accused of purposefully acquiring trade secrets from Carrio by subterfuge and then passing them forward to another vendor. It is absolutely critical that Stryker be fully advised of exactly what Carrio alleges was improperly passed on to Sinbon so that it can defend itself from the allegation that Sinbon is indeed using Carrio's secret processes. This court finds that Stryker is indispensable to its own defense; to deny Stryker access to information and documents that form the basis of Carrio's claims would infringe upon Stryker's right to fully and fairly litigate this case.

Wherefore, it is **ORDERED**

1. Plaintiff Carrio Cabling Corporation's "Motion to Maintain AEO Designation Pursuant to the Amended Protective Order" [Doc. No. 104] is **DENIED**. The Plaintiff's First Supplemental Responses [Doc. No. 114-2] shall be treated as CONFIDENTIAL under the parties Protective Order [Doc. No. 89], but <u>not</u> with additional Attorney's Eyes Only restrictions.

2. Defendant Stryker Corporation's Motion to Restrict Access to the Response [Doc. No. 113] and Carrio's Motion to Restrict Access to the Reply [Doc. No. 118] are **GRANTED**. The documents are shall remain restricted at Level 1 pursuant to D.C.COLO.LCivR 7.2(b).

Dated June 28, 2021.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge